# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **CARLOSTINE D. JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 2:18-cv-02511-JTF-tmp |
| | ) |
| **DANIELLE D. HILL and UNITED** | ) |
| **STATES POSTAL SERVICE,** | ) |
| | ) |
| **Defendants** | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Carlostine D. Jones initiated this action against Defendants Danielle D. Hill and the United States Postal Service ("U.S.P.S.") for negligence pursuant to 28 U.S.C. § 1364 as a result of a traffic accident on October 23, 2015. At the time of the accident, Danielle D. Hill was driving a motor vehicle while performing her duties as a mail carrier for the United States Postal Service.

On January 6, 2020, the Court began a bench trial in this matter hearing testimony from Plaintiff. (ECF No. 47.) Later the same day, the trial was adjourned and scheduled to resume on July 24, 2020, for the reading of expert deposition testimony, live video expert testimony and closing arguments. (ECF No. 52.) Thereafter, on August 7, 2020, Plaintiff and Defendant United States Postal Service filed Post-Trial Briefs to which Plaintiff filed a response on August 14, 2020. (ECF No. 56, ECF No. 57 and ECF No. 58.) Upon consideration of the testimony, live and by deposition, exhibits and arguments of counsel, the Court issues the

following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52.[1]

## I. Background

Plaintiff Carlostine D. Jones alleges in her Complaint that on October 23, 2015, she was traveling westbound on Jones Road near Austin Peay Highway in her 2010 Chevrolet Malibu. (ECF No. 1, ¶ 20.) Plaintiff asserts that Defendant Danielle Hill was traveling eastbound on Jones Road in a United States Postal Service truck. (*Id.* at ¶ 21.) At the time of accident, Hill was an employee of the United States Postal Service. (*Id*. at ¶¶ 8, 17, 34, 35, 37, 38, 53, 55, 62, 63, 75.) Plaintiff alleges that Hill veered into oncoming traffic, crashed the USPS truck head-on into the front left side of Jones' vehicle pushing it onto a curb and deploying the car's air bags. Plaintiff asserts that as a direct and proximate result of the accident, Jones suffered significant and permanent physical and emotional injuries. (ECF No. 1, ¶¶ 20–36, ¶¶ 45, 68, 99.) Hill was treated later that day at Methodist Hospital North for her injuries. (*Id*. at ¶ 24.) Jones was cited by law enforcement for a traffic violation pursuant to Tenn. Code Ann. § 55-10-311(a). (*Id*. at ¶¶ 26, 37.)

On August 18, 2017, Plaintiff subsequently filed an administrative claim with the United States Postal Service under the Federal Torts Claims Act, Claim No. 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A, asserting that she sustained $232,395.42 in medical bills and rendering a demand in the amount of $750,00.00 in order to settle this matter. On January 24, 2018, the USPS denied Jones' claim

---

[1] Fed. R. of Civil Procedure Rule 52 provides:
  **Rule 52. Findings and Conclusions by the Court; Judgment on Partial Findings**
                        Currentness
  **(a) Findings and Conclusions.**
  **(1) *In General.*** In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under **Rule 58**.

as excessive and advised that she could file a lawsuit in the district court within six months from her denial letter.  (ECF No. 2, n.1 and Exhibits A, A-1 and A-2 and ECF No. 1-5, 6 (Exhibit B)).  Plaintiff initiated this action on July 24, 2018, against Defendants, the United States Postal Service and Danielle D. Hill, for negligence and personal injuries pursuant to the Federal Tort Claims Act ("FTCA").  (ECF No. 1.)

The United States does not contest negligence or liability that may be attributed to the U.S. Postal Service driver for the accident.  However, the United States does contest the issue of causation regarding the specific injuries alleged and the reasonableness of Plaintiff's medical bills and damages.  (ECF No. 56, 1–2 and ECF No. 57, 1–4, 8.)  Specifically, the United States asserts that Plaintiff's claim of $205,884.39 in medical treatment as a result of her accident with the Postal worker was not credibly supported at trial.  The United States argues that the following factors rebut Plaintiff's claim: (1) her statement to the responding police officer that she was not injured; (2) the refusal of medical treatment at the time of the incident; (3) the fact that none of the other six passengers in her vehicle, two of whom were not wearing seatbelts, suffered any serious injuries; (4) her lack of candor regarding her medical history and multiple prior workers' compensation claims; (5) x-ray results and records from Methodist Hospital following the accident provide no evidence to support Plaintiff's claim; and (6) a later lumbar spine MRI disclosed possible longstanding degenerative disc disease. (ECF No. 57, 3–4.)  The United States asserts that Plaintiff's medical bills are unreasonable and therefore, she should only be awarded appropriate compensatory damages.  (*Id.* at 5–9.)

## II. Jurisdiction

The United States District Courts have exclusive jurisdiction of civil actions on claims against the United States for money damages caused by the negligent or wrongful act of any

employee of the Government while acting within the scope of employment. *See* 28 U.S.C. § 1346 (b).

Title 28 U.S.C.A. §1346 provides in pertinent part:

> **§ 1346. United States as defendant**
>
> **(a)**     The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
> . . . .
> **(b)(1)** Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This case involves a claim under the Federal Tort Claims Act for negligence and personal injuries related to a motor vehicle accident caused by a United States Postal Service employee. (ECF No. 1, 1.) As such, the undersigned district court has jurisdiction over this case.

### III. Findings of Fact

#### A. Stipulated Facts

As noted above, the parties have agreed that the following facts are not in dispute:

1. Danielle D. Hill, an employee of the United States Postal Service on October 23, 2015, was performing her duties as a mail carrier at the time of the accident.
2. Danielle D. Hill's negligence caused the accident in this case.
3. The Defendant, the United States does not contest liability.

(ECF No. 56, 1, 4 and ECF No. 57, 1 and 8.)

#### B. Facts Established at Trial

On January 6, 2020, the Court began a bench trial in this matter hearing testimony from the Plaintiff Carlostine Jones. (ECF Nos. 55, 52 and 53.) On direct examination, Jones testified that

she began working at Spring Gate Rehab nursing facility after graduating from high school in 1978. (ECF No. 55, 4: 25, 5: 1–9.) She indicated that on October 23, 2015, she got off from work and met her children, nieces and nephews at Raleigh Springs Mall. (*Id*. at 6:9–16.) She stated that it had been drizzling. (*Id*. at 7:3.) Jones testified that while she was on her way home traveling down Jones Road, the mail truck suddenly veered into her lane, crashed head-on into the front of her vehicle, a blue 2010 Chevy Malibu, causing it to rest on a curb. (*Id*. at 6:12, 7:16, 8:13–14, 17–18, Exhibits 1 and 3.)  Jones stated that the airbags hit her in the chest and knee. (*Id.* at 7:19–24.) Immediately following the accident, Jones stated that she got out of her vehicle to check on the other passengers whom she described as "upset" but "ok." (ECF No. 55, 10: 5–6.) Jones testified that the other passengers were immediately taken to the ER; she also went to Methodist North ER later that same day where she was treated for injuries to her back, neck and left knee and wrist. (*Id*. at 10:8–17.)  Because of continued pain in her back, Jones sought medical treatment at Health One and then also at Cordova Pain Clinic which eventually referred her to Doctor Reece who discussed with her treatment options, including back surgery. (*Id*. at 10:21–25; 11: 1–15.)

After Jones' treatment, surgery, and rehabilitation, she returned to work. As a result of the accident, Jones was unable to perform the duties of a nursing assistant. She was reassigned to a lesser position of a weight aide.  As a nursing assistant, Plaintiff normally helped patients with their daily living needs. This included getting them up, dressed, fed, and if necessary, placing them in wheelchairs.  Later, she would assist patients returning to bed.  Nursing assistants were routinely required to help in lifting patients.  However, as a weight aide, Plaintiff only weighs patients because she is unable to help with lifting them, as before.  (ECF No. 55, 5:8–25, 6:1–7; 12:14–20.)  Jones confirmed that she has had several prior back and knee injuries that were associated with her position at Spring Gate but was "fine up until the wreck." (*Id*. at 13:1–9.)

On cross-examination, Jones testified that none of the other passengers in her vehicle, Decarlos Jones, Shawon Jones, Kayla Polk, Shernika Spencer, Lamerica Shorty, Kevin Polk, sustained injuries other than a sprain or strain, even though at least two of them were not wearing seatbelts. (*Id.* at 14–15.) She also testified that she had filed nine (9) workers compensation claims against her employer for injuries to her wrist, knee, back and ankle and a slip and fall incident against Family Dollar in September 2013. (*Id.* at 16–17, 16:19–20.) Jones further testified that she told the responding police officer at the scene of the accident that she was "ok" and that she "had not sustained any injuries." (*Id*. at 18: 9–21.)

While reviewing her medical records, Jones confirmed on cross-examination that the medical records from Methodist Hospital indicated that she had normal range of motion, mild pain to the right lumbar region, no swelling and no radiation of pain in her back. Also, an x-ray of her back showed no evidence of fracture or dislocation, and her soft tissues and sacroiliac joints were normal. (*Id.* at 21:16–20; 22:4–24, Exhibit 4.) When compared to images of her wrist and knee injuries in 2013 from the slip and fall at Family Dollar, the images showed no remarkable differences; both were stable. (*Id.* at 24:5–20.)

Jones confirmed that she began seeing Dr. Reece on June 2, 2016; and ultimately, elected to have a two-level bilateral lumbar decompression surgery in Texas. (ECF No. 55, 28:15–24.) Jones testified that she was off from work following the surgery for nine months. When she returned to work, she was reassigned to a different position, a weight aide, instead of nursing assistant. She still experiences pain, numbness and leg spasms. (*Id*. at 29:24.) Upon inquiry by the Court, Jones confirmed that the postal employee Hill was taken from the scene by ambulance for injuries to her right wrist. (*Id*. at 32:20–25.)

The matter recommenced on July 24, 2020. (ECF No. 52.)  On that date, the Court received deposition and live video testimony from Dr. Brian Reece, Plaintiff's treating physician.  Dr. Reece stated during his deposition that 1) each of the five bills was reasonable, customary and necessary to treat the injuries that Jones suffered in the automobile accident and 2) the total of those bills $205,884.39 was also reasonable. (ECF No. 54, 8:2–9.)

Dr. Reece confirmed that he is an orthopedic spine surgeon who completed a spine fellowship at the Texas Back Institute, is licensed in Texas, Tennessee, Florida, Alabama and Arkansas, and now practices in eleven offices in two states, Texas and Tennessee. (ECF No. 54:12:10; 13:11; 16:9–19, ECF No 51-1.)  He treats patients every week in Memphis and now has hospital privileges at Delta Hospital. (*Id*. at 16:22–23 and 17:8.)  Dr. Reece stated that he first saw Plaintiff on June 2nd for primary lower back and secondary neck pain.  He stated he performed a two-level lumbar decompression surgery on Plaintiff on September 12, 2016, and last treated Plaintiff in June 2017. (ECF No. 54, 19–20 and ECF No. 51-1, 21.) Dr. Reece billed Plaintiff $68,656 as total costs for the surgery. (ECF No. 54 at 21:23–25, 51:3–5 and ECF No. 51-1, 48.) Dr. Reece concluded that Jones' injuries were secondary to the accident.  (ECF. No. 54, 27.)

On cross-examination, Dr. Reece testified that he was not privy to Jones' complete medical history, had not examined all of her medical records and was unaware of her nine workers compensation claims. (*Id.* at 29–30.)  Thus, Dr. Reece testified that based on this information, he could not say that her injuries were due to the accident or that the accident exacerbated a prior injury. (*Id*. at 30–36.) On redirect, however, Dr. Reece testified that if a patient is healthy for more than a year after a prior back injury, any new injury is just that—a new injury.  (*Id.* at 59:17–19.)

On the issue of reasonableness of medical costs and fees, Dr. Reece explained that it was logistically sound for him to perform the surgery in Texas, at a facility where he had a support team

7

that could accommodate Plaintiff's preexisting medical conditions, comorbidities and body habitus. (ECF No. 54, 38–42.) Regarding his fee for the surgery, which he stated was 100 percent effective in this case, Dr. Reece testified on cross-examination, that the amount billed for the surgery was reasonable and customary and that it would have been the same fee no matter where the services were provided. (ECF No. 54 at 38, 42–43.) Dr. Reece further testified that the $113,000 that was charged by the Frisco Ambulatory surgery center was a reasonable fee despite lower fees charged by other facilities. (*Id*. at 52–53, 56.) Plaintiff rested and the parties were directed to file closing briefs by August 14, 2020. (*Id.* at 64.)

### IV. Conclusions of Law

#### A. Legal Standards

Pursuant to 28 U.S.C. §2674, the FTCA authorizes suit against the United States and renders the federal government liable in the same manner and to the same extent as a private party would be for certain torts of federal employees acting within the scope of their employment. *Molzof v. United States*, 502 U.S. 301, 305 (1992), *Schindler v. United States of America,* 661 F.2d. 552, 554 n. 2. (6th Cir.1981). [2] In these cases, the Courts must follow the law of the state in which the allegedly negligent or wrongful act occurred. "In applying the FTCA, the court must use state law pertaining to private persons...... to determine if these elements are present." *Schindler,* 661 F.2d at 560.

---

[2] **§ 2674. Liability of United States**

Currentness

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

8

Under Tennessee law, a plaintiff alleging negligence must prove: (1) a duty of care was owed by the defendant to the plaintiff; (2) the defendant engaged in conduct falling below the applicable standard of care, amounting to a breach of the duty owed; (3) the plaintiff sustained an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *Allstate Insurance Co. v. United States*, 973 F. Supp. 759, 762 (M.D. Tenn. May 7, 1997) quoting, *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993).

It is undisputed that on October 23, 2015, during the course of her employment, Hill drove a U.S. Postal truck into oncoming traffic and collided head-on with Jones' vehicle. Hill's conduct breached the duty of care owed to others in violation of Tenn. Code Ann. § 55-8-136 for failing to exercise due care, to maintain a safe lookout and proper control of the vehicle. Hill's negligence caused the accident and resulted in Plaintiff's injuries. (ECF No. 1, 11.) The undisputed facts clearly support Plaintiff's claim of negligence. *Allstate*, 973 F. Supp. at 762.

However, after conceding Hill's negligence, the Defendant disputes whether the accident proximately caused Jones' injuries or whether the accident simply worsened a prior condition. Despite Defendant's arguments that the trial testimony did not establish that the accident caused the injuries which totaled more than $200,000 in medicals, the Court finds otherwise. The Court finds that the accident caused Jones' injuries and her need for treatment, including surgery. The Defendant attempts to discredit Jones based on her many prior workers compensation claims of injuries to her back, knees, neck and wrist and the fact that none of the other passengers suffered more than a sprain, strain or bruises. The Defendant also challenges Dr. Reece's ability to determine causation without review of Jones' prior medical history. (ECF No. 57, 3.) These factors are largely inconsequential. Importantly, there has been no showing that at the time of the collision, Jones was suffering from, or being treated for any prior injuries. Further, Dr. Reece testified that if a patient

goes a year with no need for continued back pain treatment, this typically shows that the patient's prior condition has been resolved. Therefore, the Court finds that the October 2015 accident was the proximate cause of Jones' injuries.

Next, the parties disagree about the reasonableness of the medical bills that were incurred and whether Plaintiff's opinion witness is qualified to verify the reasonableness of these charges in this jurisdiction. Plaintiff argues that:

> Dr. Reece also testified without opposition that the Plaintiff incurred $205,884.39 in medical bills associated with the surgery he performed on September 12, 2016. Dr. Reece testified that he is well-qualified to opine about the reasonableness of these bills as he is familiar with billing from Baptist, Methodist and multiple other surgical facilities. The cross-examination of Dr. Reece on this subject failed for multiple reasons. First, he does not need to know or have expertise in how any given provider sets its rates and calculates its bills. He needs to know only that the bills include charges that are both reasonable and customary for the services provided. There is no question that Dr. Reece performs back surgeries in ambulatory surgical centers. He is perfectly qualified to testify about their charges and related services, such as anesthesia. Second, the cross-examination involving a comparison of charges to those of another one of his patients was totally flawed because those were not the same surgeries. While Dr. Reece performed a two-level lumbar decompression on the Plaintiff, he performed a single-level lumbar decompression on the other patient; hence, the difference in charges.

(ECF No. 56, 5.) Defendant asserts that Dr. Reece's testimony regarding the charges is not credible and the amount of the charges is unreasonable. Defendant contends that Plaintiff was not advised that Dr. Reece could not perform the surgery in Memphis because he did not have hospital credentials in the City at that time. "Dr. Reece claimed to be qualified to speak as to the reasonableness of his own medical bills for spinal surgery based on nothing more than having previously seen local surgery bills from some of his patients while reviewing their medical records." (ECF No. 57, 6.) Defendant asserts that Dr. Reece should not be allowed to give his opinion as an expert on the reasonableness of these fees based solely on just seeing what other providers have billed for these services. The Court disagrees because Dr. Reece' opinion was not based solely on viewing what other providers bill.

10

Under Tennessee law, a plaintiff seeking to recover past medical expenses must present expert testimony to prove (1) that his past medical expenses were reasonable and necessary and (2) that the injury was, in fact, caused by the incident at issue. *Adams v. Farbota,* No. 3:13-cv-01449, 2015 LEXIS 43616 at **16 (M.D. Tenn. April 2, 2015), citing cases, *Borner v. Autry,* 284 S.W.3d 216, 218 (Tenn. 2009)). The Court has already addressed that Dr. Reece's testimony regarding causation in this case and his conclusion that the accident caused the back injury.

Next, the Court must address Defendant's argument that Dr. Reece is not qualified to offer his opinion on the reasonableness of the fees in this case. More specifically, Defendant takes issue with Dr. Reece's refusal to opine about how the surgery center or the anesthesia practice billed their services. Defendant also contests Dr. Reece's ability to testify about the need for 38.5 hours of home healthcare services in this case.

"To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.' " *Pride v. BIC Corp,* 218 F.3d 566, 577 (6th Cir. 2000). The qualification standard is applied liberally. *U.S. v. Barker,* 553 F.2d 1013, 1024 (6th Cir.1977). "The issue … is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit,* 25 F.3d 1342, 1351 (6th Cir. 1994). Dr. Reece, an orthopedic spine surgeon and the care provider in this case, is well qualified, based on his personal and professional experience in this field, to offer expert opinion testimony regarding customary and reasonable fees for spinal surgeries. In fact, Dr. Reece noted that his own services are not billed based on the complexity of the procedure, but the fair market value of the services provided. The Court is persuaded that, with respect to fees and services, Dr. Reece is sufficiently familiar with what is reasonable, customary, and necessary within this highly specialized medical field. Despite Defendant's objections to the amount of

11

damages claimed, it agrees that Plaintiff is entitled to "some measure of compensatory damages" and minimal non-economic damages. (ECF No. 57, 8.)

Regarding Dr. Reece's expertise on the medical costs, Plaintiff argues that:

> Under Tennessee law, a physician who is familiar with the extent and nature of the medical treatment a party has received may give an opinion concerning the necessity of another physician's services and the reasonableness of the charges.[3] To be qualified to render these opinions, the physician must first demonstrate (1) knowledge of the party's condition, (2) knowledge of the treatment the party received, (3) knowledge of the customary treatment options for the condition in the medical community where the treatment was rendered, and (4) knowledge of the customary charges for the treatment.

(ECF No. 58, 6.)

It is clear that Dr. Reece has knowledge of the Plaintiff's condition and the treatment she received as the treating physician in this case. Dr. Reece has knowledge of customary treatment options for Plaintiff's condition in Memphis and Dallas based on his medical practice in both of these communities. He examined Plaintiff three times prior to the surgery here in the Memphis area and testified that he had also reviewed fees charged other patients for back surgeries in this area. (ECF Nos. 54, 48 and 57.) Therefore, the fact that he did not perform the procedure in Memphis does not diminish in any respect his prior years of experience at his own facility in Dallas or his capability to render an expert opinion on the reasonableness of the fees in this case. As noted above, Plaintiff must prove by competent expert testimony that the accrued medical bills were both "necessary and reasonable" in order to obtain compensation for these medical services. *Dedmon v. Steelman*, 535 S.W.3d 431, 438 (Tenn. App. 2017) (quoting *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009)). Based on his experience, training and knowledge of this case, the Court again finds that Dr. Reece was qualified to testify regarding the necessity and

---

[3] *Dedmon vs. Steelman*, 535 S.W.3d 431, 438 (Tenn. 2017) (citing *Long v. Mattingly*, 797 S.W.2d 889, 893 (Tenn. Ct. App. 1990); *Employers Ins. Of Wausau v. Carter*, 522 S.W.2d 174, 176 (Tenn. 1975)).

reasonableness of the medical services and the associated bills for these services. (ECF No. 51-1,1–2.)

Dr. Reece testified that Jones incurred $205,884.39 in medical bills stemming from the October 23, 2015 accident. Dr. Reece and the SOAR Institute charged $68,656.52 for the back surgery. The Frisco Ambulatory Surgery Center charged $113,486.97; the Texas Anesthesia Group billed $20,800.00; Precision Medical Products invoiced $995.00 for DVT compression sleeves; and Home Care Assistance billed $1,945.90 for 38.3 hours of home health care assistance. Dr. Reece testified that all of these bills were necessary, reasonable and customary for all of the services related to her two-level lumbar decompression surgery and recovery. (ECF No. 56, 2, ECF No. 54, 20-26, ECF No. 51-1, 47–52 Exhibits 3–7.)

A plaintiff who is injured by another's negligence is entitled to recover two types of damages: economic, or pecuniary, damages and non-economic, or personal, damages. *Spearman v. Shelby County Board of Education,* No. W2019-02050-COA-R3-CV, 2021 WL 142170 at *18 (Tenn. App. Jan. 15, 2021) citing *Meals ex rel Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419-20 (Tenn. App. Aug. 30, 2013). Economic damages include past medical expenses, future medical expenses, lost wages, and lost earning potential. *Id.* at 419. A plaintiff may seek recovery for all "economic losses that naturally result from the defendant's wrongful conduct." *Meals*, 417 S.W.3d at 420. "Non-economic damages include pain and suffering, permanent impairment and/or disfigurement, and loss of enjoyment of life." *Id.* at 420 (quoting *Elliott v. Cobb*, 320 S.W.3d 246, 247 (Tenn. 2010)). Plaintiff requests a total verdict of $617,653.17, or three times the amount of her medical bills, as compensation for her injuries, pain and suffering, loss of enjoyment of life and economic damages. (ECF No. 58, 9.)

The Court finds that Plaintiff is entitled to recover the full amount of all pecuniary damages or medical bills for services that were rendered as a result of the accident. That amount is $205,884.39. However, the Court is not persuaded that Plaintiff should recover double that amount for non-economic damages. Even though the surgical procedure performed in this matter was significantly invasive and serious, the non-economic damages specific to this case are subjective and not susceptible to proof by a specific dollar amount. *Dedmon*, 535 S.W.3d at 437–38. That being said, Plaintiff did testify that she still experiences significant back pain, leg spasms and cramps, lack of sleep and other physical consequences as a result of the accident. (ECF No. 55, 11–12.) In addition, although Plaintiff has returned to work, she is unable to perform tasks required of a nursing assistant. Plaintiff has assumed a new position, a weight aide, which eliminates the need to lift patients. After a full review of the record, the Court finds an award of $200,000 adequate to compensate Plaintiff for her non-economic damages that resulted from the October 2015 accident.

Plaintiff may petition the Court for an amendment to allow recovery of costs, interest, and attorney's fees. *Premo v. United States,* 599 F.3d 540, 549 (6th Cir. 2010.) Said motion should include an affidavit and statement of fees and costs from counsel and must be filed within fourteen days of this Order.

### V. **CONCLUSION**

For the foregoing reasons, the Court awards damages in the amount of $405,884.39 in favor of Plaintiff and against Defendants.

**IT IS SO ORDERED** this 23rd day of February 2021.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE